MICHAEL H. LOONIE *vs.* FRANK E. WILSON & others.

Suffolk. November 22, 1918. — September 10, 1919.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Appeal, Order *nisi,* Costs. *Equity Jurisdiction,* Equitable lien. *Bankruptcy. Words,* "Forthwith."

When in a suit in equity an order is made in the Superior Court that an appeal to this court shall be dismissed for want of prosecution unless it is entered in the clerk's office within ten days, the jurisdiction of the Superior Court is not brought to an end by the expiration of the ten days and, until the Superior Court has dismissed the petition on proof of the fact that the appeal was not entered within the ten days, that court has jurisdiction of the case and although the ten days have expired can extend the time for entering the appeal.

Under St. 1911, c. 284, § 1, which provides that "an appeal from a final decree of the Superior Court shall forthwith be entered in the Supreme Judicial Court," and gives to the Superior Court no power to extend the time of appeal specified in the statute, where such an appeal was taken on July 5 of a certain year and a judge of the Superior Court afterwards found that, in case the printing was completed and the case entered in the Supreme Judicial Court by September 20, it would be entered forthwith, and where the evidence on which this finding was made was not reported, it was *held* "with some hesitation" that this court could not say that no facts could have existed which would have warranted the Superior Court in coming to the conclusion that in case the appeal was completed by September 20 it would be completed within the time specified in St. 1911, c. 284, § 1.

A contract between a contractor and a city, for the "collection of ashes, the removal of snow and street cleaning" and "for hauling material which went into the construction or repairs of streets," provided that the city might retain out of any money due the contractor such sums as the director of public works should direct as being required "to settle claims for materials or labor furnished for carrying on the contract," of which notice should have been filed as there provided. The contractor became a bankrupt and certain creditors of the contractor, having claims for teams and teamsters furnished to him for the performance of this contract, brought a suit in equity against him and the city for the satisfaction of their claims out of the money retained by the city, alleging that in furnishing their teams they relied on the provision of the contract between the contractor and the city stated above. *Held,* that the plaintiffs' claims, being for compensation for carts and their drivers, were not claims for "materials or labor furnished" and therefore that the plaintiffs were not entitled to the benefit of any part of the money retained by the city under the contract.

In the case above described it also was *held* that the plaintiffs were not entitled to share in the fund retained by the city in case they could prove the separate value

of the labor of the drivers furnished by them, because there was no debt of the contractor to pay such sums separately.

Where a bankrupt is a nominal party to a suit in equity in which he is represented by his trustee in bankruptcy and prevails in the suit, the costs to which he would be entitled if a real party in interest should be awarded to his trustee in bankruptcy.

BILL IN EQUITY, amended from an action at law on February 1, 1917, by Michael H. Loonie against Frank E. Wilson and his trustee in bankruptcy, the National Surety Company, a corporation organized under the laws of New York and the city of Boston, to recover the sum of $1,413 due to the plaintiff by the defendant Wilson for teams and drivers furnished to the defendant Wilson for the performance of a contract between him and the city of Boston dated January 25, 1916.

Four claimants filed petitions to intervene and were made additional plaintiffs.

The case was referred to a master, who filed a report containing the findings stated in the opinion. Article 7 of the contract mentioned above was as follows: "The City may retain out of any money due the Contractor such sum as the Commissioner shall direct as being required to settle claims for materials or labor furnished for carrying on the contract, notice of which claims, signed and sworn to by the claimants severally, shall have been filed in the office of the City Clerk of the City, and with the Commissioner, and claims against the City, its agents or employees, relating to the contract." The master found "as a fact, in accordance with the agreement of all counsel, that the plaintiff and the other claimants knew of the provisions of the contract and bond and relied upon them in furnishing the men and teams." The counsel for the trustee in bankruptcy and for the surety company objected to this finding as immaterial.

The case was heard by *Wait*, J., who made the following memorandum of decision:

"The bill cannot be maintained against the surety company. This follows from *Hunter* v. *Boston*, 218 Mass. 535.

"It cannot be maintained upon the St. 1909, c. 514, § 23, for the statute does not apply to such a contract as is here before the court.

"It can only be maintained if the language of the contract and the action of the city has created an equitable lien.

"Clause 7 of the contract is largely without meaning, if it is to be construed as inserted to meet the requirements of the act of 1909. That act does not apply.

"There is no rule of law or precept of public policy which forbids the city to put itself in a position where it can make certain that those who furnish service to it pay the bills they justly incur in the course of so doing. The city need not do it. Under this contract it is possible to say — and courts in similar cases have said — that it is not bound to retain money from the contractor with which to pay for labor and materials and services connected with the work for which the contractor has failed to pay. But if it does retain money beyond what was necessary for its own protection under the provision of the contract, it may well be compelled to give to those who have relied upon the provision and acted under it, the benefit of its action.

"In this case Boston did so retain money; the petitioners did rely on the provision of the contract; they did act under it in giving notice of their claims.

"I rule that the evidence admitted by the master against the city and the assignee was material, and its admission was proper for the purpose of showing the circumstances surrounding the parties interested in the contract and interpreting their action.

"The proof by the various petitioners in the bankruptcy of Wilson does not preclude them from this proceeding, though anything received in the bankruptcy lessens the possible recovery here, as a credit in favor of Wilson.

"Let decrees be prepared confirming the master's report, dismissing the bill as against the National Surety Company with costs taxed as at law for that company; and ordering payment by the city of Boston of the amount retained by it to the petitioners in the amounts found due by the master, less any dividends received by them from the bankrupt estate of Wilson with costs taxed as at law against the city and the assignee."

Later, on June 29, 1918, by order of the judge a final decree was entered in accordance with this memorandum of decision.

On July 5, 1918, Guy A. Ham, trustee in bankruptcy of Wilson, appealed from this decree. The subsequent proceedings are described in the opinion. The plaintiff Loonie appealed from the order of August 28, whereby the motion of the defendant

Guy A. Ham, trustee in bankruptcy, was allowed, extending the time for the completion of his appeal to September 20, 1918.

*R. H. Willard & W. H. Taylor,* for the trustee in bankruptcy, submitted a brief.

*J. J. Gaffney,* for the plaintiff Loonie.

*J. A. Vitelli,* for the intervening petitioner Henry D. Kelley.

*H. W. Babb,* for the intervening petitioner Edward Hoar.

LORING, J. The plaintiff had a decree in the Superior Court. From that decree the defendant Ham, trustee in bankruptcy of the defendant Wilson, took an appeal. On August 8, 1918, the plaintiff Loonie made a motion in the Superior Court that this appeal should be dismissed for want of prosecution. On August 16 this motion was allowed "unless papers on appeal are prepared and entered in clerk's office of full court within ten days." On the day after the ten days expired Ham made a motion in which he alleged that he was "informed that it is not possible to prepare the papers within ten days; that your respondent intends in good faith to prosecute his appeal. Wherefore your respondent moves the court to extend the time . . . to and including October 1, 1918." On August 28, 1918, this "motion [was] allowed by the court as of 26th, time extended to Sept. 20, 1918."

The plaintiff Loonie has made a motion in this court that Ham's appeal be dismissed on the ground that on August 28 (when the order extending the time was made) the jurisdiction of the Superior Court over the cause had come to an end. That contention is disposed of by the decision of this court in *Plaisted* v. *Cooke,* 181 Mass. 118. In that case it was decided that an order allowing a motion to dismiss a cause unless something is done within a specified time is in legal contemplation an order that the cause will be dismissed if the action in question is not taken within the time specified and that until proof has been made of the fact that the action in question was not taken within the time specified and an order based upon proof of that fact dismissing the action has been entered the jurisdiction of the court has not come to an end. Loonie relies on *Hack* v. *Nason,* 190 Mass. 346. That decision has no bearing on this question. The conclusion reached in *Hack* v. *Nason* was reached because R. L. c. 173, § 106, provides that on the expiration of twenty days the court has no juris-

diction to allow a bill of exceptions unless the time is extended within twenty days.

The order made on August 28 should not have been made "as of August 26." When an order is made as of an earlier day it is made in that form to avoid an intervening act on the theory that there was an error in the earlier order. There was no occasion for such an order in the case at bar. On August 28 the cause was still pending and for that reason the court on that day could modify the earlier order on being satisfied that that ought to be done, although Loonie was entitled to an order dismissing the cause unless the earlier order was modified. Loonie's motion to dismiss the appeal taken by the defendant Ham must be denied.

In addition to his motion to dismiss made in this court Loonie took an appeal from the order of August 28. That raises the question whether that order was correct. By St. 1911, c. 284, § 1, it is provided that "an appeal from a final decree of the Superior Court shall forthwith be entered in the Supreme Judicial Court." No power is given to the Superior Court to extend the time specified in the statute. The question presented by the appeal therefore is whether under this statute which limits the appellant to entering his appeal in the Supreme Judicial Court "forthwith," the order allowing the appellant to complete his appeal on or before September 20, 1918, was erroneous. Upon taking his appeal it was the duty of the appellant to "forthwith" give an order to the clerk of the Superior Court to make up and print the record, and on the printing being completed to "forthwith" enter the case in the Supreme Judicial Court. *Griffin* v. *Griffin,* 222 Mass. 218.

It seems to be strange, if an order to print the record here in question was given by the appellant "forthwith" on the order being made on July 5, that the Superior Court should have found that in case the printing was completed and the case entered in the Supreme Judicial Court by September 20 it would be entered "forthwith." The evidence on which this order was made is not before us. With some hesitation we have come to the conclusion that we cannot say that no facts could have existed which would have warranted the Superior Court in coming to the conclusion that in case the appeal was completed September 20 it would be completed within the time specified in St. 1911, c. 284, § 1. The

burden of showing error was on Loonie. In the absence of the evidence on which the Superior Court acted that burden has not been sustained. The order of August 28 is not shown to be erroneous and must be affirmed.

The suit in the case at bar is brought by five creditors of the defendant Wilson to recover payment of moneys severally due to them from Wilson (1) out of a fund of $4,220.23 retained by the city of Boston pursuant to article 7 of its contract with Wilson, and (2) to recover these sums from the National Security Company by reason of a bond given by it to the city of Boston conditioned for the faithful performance by Wilson of the work which he had contracted to do for the city and also for the payment "for all labor performed or furnished and for all materials used in carrying out said contract." Wilson's contract with the city was a contract for the "collection of ashes, the removal of snow and street cleaning" and "for hauling material which went into the construction or repair of streets." The claims of the five plaintiffs against Wilson were for teams and teaming hired of them by him in performing that contract.

As originally drawn the bill was brought on the notion that the city had procured the bond to be given by the surety company in compliance with St. 1909, c. 514, § 23. But that statute applies only in cases where "public buildings or other public works are about to be built or repaired [by a county, city or town] . . . upon which liens might attach for labor or materials if they belonged to private persons." It was specifically so provided in the original act (St. 1878, c. 209) which applied to contracts of that kind entered into in behalf of the Commonwealth. That provision was preserved when that act was re-enacted in Pub. Sts. c. 16, § 64. But when that act was re-enacted in the Revised Laws (R. L. c. 6, § 77) the form of the enactment was changed. Although the provision quoted above was not in terms re-enacted in R. L. c. 6, § 77, that act (by the true construction of it) is an act limited in the same way that it would have been limited in terms had this clause been re-enacted. When the provisions of R. L. c. 6, § 77 were extended to counties, cities and towns by St. 1904, c. 349, the form of enactment adopted in R. L. c. 6, § 77 was followed and that form of enactment again was followed in St. 1909, c. 514, § 23. For a history of these acts see *Friedman* v.

*County of Hampden,* 204 Mass. 494. As we have said the bill in equity now before us was originally brought on the theory that the bond given by the defendant surety company was given in compliance with St. 1909, c. 514, § 23. But it is plain (for the reasons stated above) that that act does not apply in case of the contract between the city of Boston and Wilson here in question.

After the bill was brought this view of the law seems to have been recognized by the plaintiffs and the bill was amended by setting up article 7 of the contract between the city of Boston and Wilson and the fact that under it $4,220.23 had been retained and is now in the hands of the defendant city. Article 7 of the contract between Wilson and the city of Boston provided that the city might retain out of any money due to Wilson such sum as the commissioner of public works should "direct as being required to settle claims for materials or labor furnished for carrying on the contract, notice of which claims . . . shall have been filed in the office of the City Clerk of the City, and with the Commissioner, and claims against the City." So far as the bill proceeds on the ground that article 7 was inserted in the contract between Wilson and the defendant city in compliance with St. 1909, c. 514, § 23, the plaintiffs are met with the same objection that is fatal to the bill brought by them to secure payment from the surety company. That objection is that the work provided for in the contract between Wilson and the city is not work on public buildings or other public works "upon which liens might attach for labor or materials if they belonged to private persons." And that has been recognized by the plaintiffs in their arguments in this court.

Failing to maintain the bill on the ground that the bond of the surety company and the retention of funds by the city under article 7 were given and made in compliance with St. 1909, c. 514, § 23, the plaintiffs have undertaken to maintain their bill on the ground that they knew of the provisions of article 7 and relied upon them and that for this reason the $4,220.23 retained by the city under article 7 of its contract with Wilson is impressed with an implied common law equitable lien for the payment of their debts. The decree of the Superior Court in favor of the plaintiffs was based upon this proposition.

The decision of the Superior Court went on the ground that

the city was not "bound to retain money . . . with which to pay for labor and materials and services connected with the work for which the contractor has failed to pay. But if it does retain money beyond what was necessary for its own protection under the provision of the contract, it may well be compelled to give to those who have relied upon the provision and acted under it, the benefit of its action."

The Superior Court was wrong in stating that article 7 provided not only for the retention of money "to settle claims for materials or labor furnished in carrying on the contract" but also for "services connected with the work." The latter clause is not in article 7. That article is limited to the first clause.

The claims of the plaintiffs are not claims for "materials or labor furnished." Their claims are claims for single and double teams with or without extra men and for rent of carts without either horses or men, and in each instance there is a charge for a single sum for "Hire of one single team" or "1 Double Team" or "1 team & 2 helpers" or similar charges. These are not contracts "for materials or labor furnished." See, in this connection, *Libbey* v. *Tilden*, 192 Mass. 175; *Thomas* v. *Commonwealth*, 215 Mass. 369. No equitable lien can be held to have arisen for the whole sums due the plaintiffs.

A further question arises, namely: In case the plaintiffs can prove what portions of the single sums due for labor and the use of the teams represent the value of the labor and what portions of them represent the value of the use of the teams, are they entitled to an equitable lien for those portions of the single sums due them which represent the value of the labor. We are of opinion that they are not. No debt is due from Wilson to these plaintiffs for those portions of the single sums (due the plaintiffs for labor and the use of teams) which represent the value of the labor. Since there is no debt for these portions of the single sums due the plaintiffs there can be no implied equitable lien as security for the payment of them. The doctrine of dividing a debt into separate parts not agreed to by the parties for the purpose of imposing a lien on a fund for the payment of a part of that debt is a creature of statute. In case of mechanics' liens such a division is made. But when such a case under the mechanic's lien statute was first presented it was held that no division could be made.

*Graves* v. *Bemis*, 8 Allen, 573. Thereupon St. 1872, c. 318, was enacted authorizing a division of such a debt in such case. It was provided in this act that there should be a mechanic's lien for the part of such a debt for which there would have been a lien had that been the whole of the indebtedness. And that statute has been re-enacted since then. Pub. Sts. c. 191, § 2. R. L. c. 197, § 2. The principle that in the absence of a statute no division of the debt can be made by the law was applied in the recent case of *Libbey* v. *Tilden*, 192 Mass. 175. The debt in that case not being within the statute, it was held that no lien could be imposed for a part of the debt, although if there had been a debt for that part there would have been a lien. In the absence of a statute authorizing it, the court has no right to divide a single debt created by the parties whether it be for the purpose of imposing an implied equitable lien on a fund for the payment of it or for any other purpose. For such a proceeding there is neither precedent nor principle.

It follows that the decree of the Superior Court dismissing the bill as against the surety company must be affirmed with costs. So far as relief was given against the defendant city the decree must be reversed and a decree must be entered dismissing the bill as against the defendants Wilson, Ham and the city of Boston. Wilson is a nominal party and so not entitled to costs. Ham and the defendant city are entitled to the payment of one set of costs each.

*Decree accordingly.*